ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| **YAHAIRA ARROYO LÓPEZ y otros**<br><br>Recurrida<br><br>v.<br><br>**OLEIN RECOVERY CORPORATION**<br><br>Peticionario | TA2025CE00767 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de **Humacao**<br><br>Civil Núm.: **HU2020CV00665**<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Pagán Ocasio y la Juez Barresi Ramos.

Cintrón Cintrón, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 15 de diciembre de 2025.

La parte peticionaria, Olein Recovery, Corp. (Olein Recovery), nos solicita que revoquemos la *Resolución* emitida el 15 de octubre de 2025, por el Tribunal de Primera Instancia (TPI), Sala Superior de Humacao. Mediante la misma, el TPI declaró *No Ha Lugar* la solicitud de desestimación presentada por Olein Recovery. En consecuencia, reconoció la legitimación activa del menor EJMA (concebido al momento del acto negligente y nacido posteriormente) para reclamar compensación por concepto de angustias y sufrimientos mentales, así como por lucro cesante, conforme al principio *nasciturus pro iam nato habetur*.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto de *certiorari* solicitado.

## I.

En la presente causa sobre daños y perjuicios, Olein Recovery alcanzó un acuerdo transaccional privado y confidencial, junto a la señora Nicole Amaro Sanabria (parte recurrida) y otros

---

[1] Véase *Orden Administrativa OAJP-2021-086* de 4 de noviembre de 2025.

demandantes, mediante el cual se resolvían y transigían todas las reclamaciones pasadas, presentes y futuras relacionadas al lamentable incidente acaecido el 25 de junio de 2019, que cobró la vida de Ernesto Morales Adorno y Rolando de León Carrión. La señora Amaro Sanabria era la pareja consensual del señor Morales Adorno y al momento del acto negligente de Olein Recovery, esta se encontraba embarazada. El nacimiento del niño ocurrió el 1 de octubre de 2019, es decir, posterior a la fecha de los hechos que dieron origen al pleito de autos. Olein Recovery presentó objeción y se negó a transar la reclamación del menor EJMA por angustias y sufrimientos mentales, así como por lucro cesante, como consecuencia de la muerte de su progenitor, el señor Morales Adorno.

Así las cosas, el 10 de septiembre de 2025, Olein Recovery presentó una *Moción de Desestimación*. En esencia, arguyó que un concebido-no nacido no tenía derecho a ser compensado en daños y perjuicios por sus angustias y sufrimientos morales por la muerte de su progenitor, acontecida previo a su nacimiento. Bajo esas mismas circunstancias, esgrimió que un no nacido tampoco tenía derecho a una reclamación de lucro cesante. Añadió que, al momento de la muerte de su progenitor, EJMA ni siquiera había adquirido la personalidad, ni capacidad jurídica necesaria para ser objeto de los derechos básicos reconocidos a una persona natural. En ese sentido, alegó que, al momento de los hechos, EJMA no contaba con la capacidad necesaria para discernir, lo cual convertía improcedente su reclamación en daños y perjuicios por concepto de angustias y sufrimientos morales. Además, Olein Recovery argumentó que, al no ser una persona natural al momento de los hechos que dan paso a su reclamación, EJMA estaba impedido de reclamar lucro cesante al no existir un estado de dependencia con su progenitor al momento de su muerte. En suma, adujo que, al no

existir una reclamación que justificara la concesión de un remedio en derecho sobre los hechos alegados en la demanda, relacionados al no nacido, procedía que se desestimara la causa de acción instada a nombre de EJMA.

El 30 de septiembre de 2025, la señora Amaro Sanabria, en representación de su hijo menor EJMA, se opuso a la solicitud de desestimación de Olein Recovery. En su comparecencia, esbozó que EJMA tenía derecho a reclamar daños propios conforme al principio *nasciturus pro iam nato habetur*, que lo equiparaba a un nacido para todo lo que le beneficiara. A su vez, razonó que EJMA tenía derecho a reclamar por el sufrimiento emocional que le provocó la ausencia definitiva de su padre a consecuencia inmediata de la conducta culposa imputada a Olein Recovery. También arguyó que EJMA tenía derecho al resarcimiento por la pérdida del sustento económico que razonablemente hubiera recibido de su padre (lucro cesante). Hizo hincapié en que la obligación de un padre de mantener a sus hijos no dependía de que estos hayan nacido al momento de su muerte, sino que se extiende al concebido cuya existencia era cierta y que posteriormente nació vivo. Cimentado en su interpretación del caso resuelto por el Tribunal Supremo de Puerto Rico, *Rodríguez v. Autoridad de Acueductos*, 98 DPR 872 (1970), sostuvo que el hecho de EJMA no haber nacido cuando ocurrió el daño no impedía su acción propia.

Evaluadas ambas posturas, el 15 de octubre de 2025, notificada al día siguiente, el TPI emitió la *Resolución* recurrida, en la cual determinó que no procedía la desestimación solicitada por Olein Recovery. El juzgador de los hechos dispuso que EJMA, concebido antes del fallecimiento de su padre y nacido vivo aproximadamente tres (3) meses después del accidente, ostenta la capacidad jurídica necesaria para reclamar daños propios derivados

del acto culposo que privó su derecho a la compañía, afecto y sustento de su progenitor. En su dictamen, expuso lo siguiente:

> El principio *nasciturus pro iam nato habetur* otorga al concebido protección legal en cuanto a los derechos que puedan beneficiarle, y su posterior nacimiento con vida perfecciona dicha capacidad. Negar esta protección equivaldría a desconocer el valor que el ordenamiento puertorriqueño asigna a la vida humana en formación y a la reparación integral de los daños.

> Asimismo, el reclamo por lucro cesante no puede considerarse especulativo, ya que la obligación de un padre de proveer alimentos a sus hijos constituye un deber jurídico y no una mera expectativa económica. El perjuicio patrimonial sufrido por el menor, en cuanto a la pérdida de dicho sustento futuro, encuentra base en el deber legal de manutención y en la previsibilidad del daño.

Inconforme, Olein Recovery acude ante este Tribunal y le imputa al TPI la comisión de los siguientes errores:

> Erró el Tribunal de Primera Instancia al reconocer la capacidad de un menor, quien no había nacido al momento de los hechos, para reclamar compensación por daños propios en concepto de angustias y sufrimientos mentales.

> Erró el Tribunal de Primera Instancia al establecer que el reclamo por lucro cesante de un menor, quien no había nacido al momento de los hechos y, por tanto, no era dependiente del finado, procede al amparo de nuestro ordenamiento jurídico.

Junto a su recurso, Olein Recovery incoó una *Moción en Auxilio de Jurisdicción*, con el objetivo de que paralizáramos los procedimientos ante el TPI, en particular la Conferencia con Antelación al Juicio calendarizada para el 17 de diciembre de 2025, hasta tanto resolviéramos el recurso en los méritos. El 24 de noviembre de 2025, la señora Amaro Sanabria, en representación de su hijo menor EJMA, presentó su oposición a la moción en auxilio de jurisdicción y su alegato en oposición a la expedición del auto de *certiorari*.

Mediante *Resolución* emitida el 2 de diciembre de 2025, denegamos la *Moción en Auxilio de Jurisdicción*.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A**.

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *León v. Rest. El Tropical*, 154 DPR 249 (2001). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Scotiabank v. ZAF Corp.*, 202 DPR 478 (2019).[2]

Sin embargo, distinto al recurso de apelación, la expedición del auto de *certiorari* está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *García v. Padró*, 165 DPR 324, 334-335 (2005).

Así, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari,* la Regla 40 del Reglamento del Tribunal de Apelaciones

---

[2] El recurso de *certiorari,* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de Procedimiento Civil, *supra.*

enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, evaluar, tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada. Ello, para tomar la determinación si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97-98 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte que las impugne probar lo contrario. *Vargas v. González*, 149 DPR 859, 866 (1999).

**B.**

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, es uno de los vehículos procesales disponibles para que una parte solicite la desestimación de una demanda. Entre las defensas a formularse se encuentran la falta de jurisdicción sobre la materia y el dejar de exponer una reclamación que justifique la concesión de un remedio.

Al enfrentarse a una moción de desestimación de esta naturaleza, el juzgador debe dar por buenas y ciertas todas las alegaciones fácticas delineadas en la demanda y considerarlas del modo más favorable a la parte demandante. *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38 (2015); *Colón Rivera et al. v. ELA*, 189 DPR 1033 (2013). No obstante, para que ello ocurra, los hechos deben ser aseverados de forma adecuada, así como también, expresados clara y concluyentemente y que de su faz no den margen a dudas. *Colón v. Lotería*, 167 DPR 625, 649 (2006).

Ahora bien, el promovente de la solicitud de desestimación prevalecerá si le demuestra al TPI que -aun dando por ciertos los hechos correctamente alegados- la demanda instada no expone una reclamación que justifique la concesión de un remedio. *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 505 (1994).

Se desprende de lo antepuesto que, el juez o la jueza, al evaluar una solicitud de desestimación por el fundamento de que la demanda no expone una reclamación que justifique la concesión de un remedio, está obligado/a tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la parte demandante. *Rivera Sanfeliz, et al. v. Jta. Dir. First Bank*, supra; *Colón v. Lotería*, supra. Así, solo cuando el TPI efectúe dicho examen y esté convencido de que la parte demandante no tiene derecho a remedio alguno bajo cualesquiera hechos que pueda probar, es que procederá desestimar la demanda. *Colón*

*Rivera et al. v. ELA*, supra, a la pág. 1049; *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013)*; Pressure Vessels P.R. v. Empire Gas P.R.*, supra.

La demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación. *Consejo de Titulares v. Gómez Estremera et al*, 184 DPR 407, 423 (2012); *Pressure Vessels P.R. v. Empire Gas P.R.*, supra. Entonces, es necesario considerar si, a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida. *Íd.*

### III.

En su recurso, la parte peticionaria sostiene que el TPI se equivocó al emitir la *Resolución* recurrida, al basarse en una opinión del Tribunal Federal para el Distrito de Puerto Rico contraria al estado de derecho que rige la controversia planteada. Particulariza que, toda vez que el menor EJMA no había nacido al momento de ocurrir el acto por medio del cual falleció su progenitor, este carecía de la conciencia y el discernimiento necesario para reconocer la existencia de una pérdida. Añade que este no tenía la capacidad requerida para percibir angustias y sufrimientos mentales. Además, aduce que, bajo tales circunstancias, EJMA no era un dependiente del causante y mucho menos una persona natural al momento del daño. Por tal razón, entiende que la causa de acción por lucro cesante carece de los elementos necesarios para que sea viable en derecho. Es su contención que la demanda presentada a su nombre debe ser desestimada.

De otro lado, la parte recurrida alega que las conclusiones de la parte peticionaria son infundadas e incorrectas. Precisa que el foro *a quo* realizó un análisis adecuado y reconoció que, en Puerto Rico,

existe una decisión del Tribunal Supremo que atiende la situación de un menor concebido al momento del daño y nacido vivo, entiéndase, *Rodríguez v. Autoridad de Acueductos*, 98 DPR 872 (1970), de la cual partió como piedra angular de razonamiento para su determinación.

A su vez, la parte recurrida aduce el análisis comparativo realizado por el TPI no pretende modificar el derecho puertorriqueño, sino reafirmar que la solución acogida mediante la decisión impugnada, no solo es correcta bajo nuestro derecho, sino que se ajusta al consenso mayoritario de los sistemas jurídicos. Esto es, que un hijo concebido al momento del acto culposo y nacido vivo ostenta capacidad plena para reclamar, tanto por angustias mentales debido a la pérdida filial, como por el sustento que habría recibido del causante.

Al examinar puntillosamente los argumentos de las partes y los documentos que obran en el expediente, determinamos no intervenir con la actuación del TPI en esta etapa de los procedimientos. En el caso de autos, el foro primario, en el ejercicio de la discreción que ostenta en el manejo de los casos, declaró *No Ha Lugar* la solicitud de desestimación instada por la parte peticionaria, conforme a la doctrina vigente y el principio *nasciturus pro iam nato habetur*. A satisfacción del TPI, la parte recurrida logró establecer que el menor EJMA ostenta legitimación activa para exigir compensación por concepto de angustias y sufrimientos mentales, así como por lucro cesante, a raíz de la muerte de su progenitor en un incidente desgraciado.

Por lo tanto, concluimos que la parte peticionaria no nos colocó en posición de intervenir con la determinación recurrida. Tampoco demostró que el TPI actuó con pasión, prejuicio, parcialidad o que incurrió en error manifiesto al emitir la *Resolución*. Así las cosas, y ante la ausencia de alguna de las instancias

contempladas en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* procede denegar la expedición del auto de *certiorari.*

Advertimos que la denegatoria de un recurso de *certiorari* no prejuzga los méritos del asunto planteado, y, por tanto, este puede ser reproducido nuevamente mediante el correspondiente recurso de apelación. *García v. Padró,* supra, citando a *Núñez Borges v. Pauneto Rivera,* 130 DPR 749(1992).

**IV.**

Por los fundamentos antes expuestos, se deniega la expedición del auto de *certiorari* solicitado. Se devuelve el caso al TPI para la continuación de los procedimientos.

Lo acordó el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones